UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CAROL HOWARD,

       Plaintiff,

                                                Civil Action No. 12-11949

v.

                                                HON. MARK A. GOLDSMITH

WILLIAM BEAUMONT HOSPITAL,

       Defendant.

_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Dkt. 24)

### I. INTRODUCTION

     This is an employment retaliation case brought under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, et seq., and Michigan's Elliot-Larsen Civil Rights Act (ELCRA), Mich. Comp. Laws § 37.2101, et seq.  This case is brought by Plaintiff Carol Howard against her former employer, Defendant William Beaumont Hospital.  Plaintiff alleges that Defendant retaliated against her by failing to rehire her after she engaged in protected activity. Specifically, Plaintiff claims that, after Defendant eliminated her position as a medical assistant, Plaintiff applied for other medical assistant positions with Defendant.  Despite her qualifications, Plaintiff was not hired, which she claims was the result of a charge of age discrimination she filed with the Equal Employment Opportunity Commission (EEOC) following her layoff.  Afterward, Plaintiff alleges that Defendant retaliated against her by not hiring her for other positions.

     Now before the Court is Defendant's motion for summary judgment (Dkt. 24).  The matter is fully briefed and oral argument was heard on August 1, 2013.  The Court has thoroughly

reviewed the motion papers and the evidence attached thereto. For the reasons set forth below, the Court grants summary judgment in favor of Defendant.

## II. BACKGROUND

Plaintiff worked as a medical assistant at Defendant's Shorepointe Family Physicians (Shorepointe) office in St. Clair Shores, Michigan. Howard Dep. at 42 (Dkt. 26-2). Prior to her layoff, Plaintiff had 15 years of experience within the William Beaumont system. Id. at 19. At some point during Plaintiff's time at Shorepointe, Plaintiff was assigned to work solely with Dr. Luke Elliot. Id. at 42. In 2010, Dr. Elliot reduced his hours and, as a result, Defendant determined that Dr. Elliot no longer needed a medical assistant. Id. at 56.

On March 12, 2010, Plaintiff was informed that, because Dr. Elliot's hours were being reduced, her position was being eliminated and, therefore, she was being let go. Id. Rachel Woolbright, a Human Resources (HR) representative with Defendant, informed Plaintiff of her layoff and offered Plaintiff a severance agreement to sign. Id. Plaintiff refused to sign the severance agreement and later testified that she stated that she believed her layoff was due to her age. Id. at 57-58. Plaintiff was 55 years old at the time of her layoff. Id. at 57.

Because Plaintiff did not sign the severance agreement, she was considered a displaced employee, meaning that a representative from HR would provide Plaintiff extra assistance in attempting to find another position with Defendant. Woolbright Dep. at 11 (Dkt. 26-3). Each position posted by Defendant had a HR representative or "recruiter" dedicated to that position. Id. at 106, 111. Regarding positions for which she was the HR representative, Woolbright testified that "typically" she "would come in and be in the process" of hiring an external candidate. Id. at 12. However, the HR department would interview all external candidates. Id.

2

Woolbright stated that she usually did not interview internal candidates, such as Plaintiff, and that she probably did not interview Plaintiff, although she could not recall for sure. Id. at 12-13.

A week after her termination, on March 19, 2010, Plaintiff applied for a position at one of Defendant's hospitals in Grosse Pointe, Michigan. Application Summary at 2 (Dkt. 26-13). This position was later cancelled. Id.

On March 22, 2010, Plaintiff applied for a second job as a clinical services clerk, a position similar to a medical assistant, see Woolbright Dep. at 76, at Defendant's hospital in Royal Oak. Application Summary at 1. The hiring manager for that position was Donna Carrico and the hiring contact was Carole Fraga. 3/22/10 Job Posting (Dkt. 26-15). The position was eventually offered to an individual named Cathy Creech. Id.

Plaintiff applied for a third position as a medical assistant at the hospital in Royal Oak on May 4, 2010. Application Summary at 1. The hiring manager for this position was Andrea Connolly and the HR representative was Woolbright. Id. Defendant hired an individual named Natalie Kraydich for the position. 5/4/2010 Job Posting (Dkt. 26-17).

On October 12, 2010, Plaintiff filed a charge of discrimination with the EEOC, claiming that she had been terminated by Defendant because of her age in violation of the ADEA. 10/12/10 Charge (Dkt. 24-3). Woolbright was informed of Plaintiff's EEOC charge and, upon request by Defendant's legal department, supplied information to the legal department. Woolbright Dep. at 100-102.

On November 8, 2010, Plaintiff applied for a fourth position as a medical assistant. Application Summary at 2. This position was at Shorepointe, her former place of employment. Woolbright was the HR representative for this position and the hiring manager was Tierney

3

Moore.  Id.  Plaintiff initially interviewed with Moore and Lenora Lalone and was subsequently invited back for a second interview with Moore and Dr. Daniel Stachelski, the physician to whom the hired medical assistant would be assigned.  Moore Aff. ¶¶ 5-10 (Dkt. 24-7).  Plaintiff was not chosen for the position.  Id. ¶ 15.

Moore testified that Plaintiff came to the interview wearing scrubs, was not forthcoming with answers during the interview, and did not have an up-to-date resume.  Id. ¶¶ 7-9.  Dr. Stachelski stated that he did not want to hire Plaintiff because he had worked with her prior to her termination and found that she worked too slowly, making his work more difficult.  Stachelski Aff. ¶¶ 4-5 (Dkt. 24-8).  Plaintiff contests Moore's characterization of her interview and testified that Dr. Stachelski told her that she "would be a good candidate for the position" because Plaintiff was "well experienced and knew how the office was run."  Howard Dep. at 20.

On February 18, 2011, Plaintiff filed a second charge of discrimination with the EEOC, this time claiming that she had been the victim of retaliation by Defendant.  2/18/2011 Charge (Dkt. 26-31).  Plaintiff claimed that Defendant refused to rehire her because she had filed a previous charge of discrimination alleging that she had been terminated based on her age.  Id.

Also at some point in January or February 2011, although the precise date is unclear from the record, Plaintiff learned through her former co-workers about a fifth medical assistant position, located at the Shorepointe office.  Howard Dep. at 14, 88-92; Howard Notes at 57 (Dkt. 26-10).  Plaintiff testified that she spoke with Woolbright to learn about the position because it was not posted on Defendant's website.  Howard Dep. at 14.  According to Plaintiff, Woolbright explained to her that she would not be the best fit for the position.  Howard Dep. at 88.  The record does not indicate that Plaintiff applied or interviewed for this position.  Application

4

Summary 1-3.

During their conversation, Woolbright informed Plaintiff that she had a disciplinary notice in her departmental file and that was one of the reasons she was not hired for the Shorepointe position Plaintiff applied to in November 2010. Woolbright Dep. at 7-8, 15. Under Defendant's hiring scheme, a hiring manager does not have to look at the qualifications of an applicant who has received a corrective action.[1] Id. at 16.

Near the end the conversation, Plaintiff testified that Woolbright stated that she could no longer speak with Plaintiff due to her pending EEOC claim. Howard Dep. at 92-93 (Dkt. 26-2). However, Plaintiff admitted that she and Woolbright did not discuss Plaintiff's applications for other positions with Defendant. Id. at 93. From her perspective, Woolbright contests that she ever stated that she could no longer speak to Plaintiff because of Plaintiff's pending EEOC claim. Woolbright Dep. at 128-129. Woolbright, however, recalled that she wanted to end that particular phone call because Plaintiff was being rude. Id. at 129.

On April 13, 2011, Plaintiff applied for a sixth position as a medical assistant at Shores Family Physicians. Application Summary at 3. The hiring manager for the position was Rhonda

---

[1] The disciplinary notice in Plaintiff's departmental file was written on a form titled "corrective action record." Disciplinary Notice (Dkt. 26-32). The disciplinary notice apparently was placed in Plaintiff's file on March 12, 2010, the day of Plaintiff's termination. The notice stated that Plaintiff did not properly store medication on March 11, 2010, and, as a result, the medication had to be destroyed. Id. The notice also has a handwritten annotation by Woolbright, stating the following: "This was not presented to the employee due to her impending layoff. Didn't want to give her warning A & then lay her off effecting [sic] her ability to find another position." Id. Plaintiff contests that the medication was improperly stored and that, even if it was, the corrective action was not properly executed because Defendant's procedure requires that the employee in question be given a chance to respond to it. Howard Dep. at 89-90, 101-103. Woolbright stated that the disciplinary notice was not brought to Plaintiff's attention because it was not a formal corrective action, Plaintiff was about to be terminated, and the hospital did not want to prevent Plaintiff from having an opportunity to be rehired. Woolbright Dep. at 15-16 .

5

Ripley and the HR representative was Woolbright. Id. Plaintiff was selected for an interview, however, she was not chosen for the job. Ripley Aff. ¶ 4 (Dkt. 24-13). Ripley testified that Plaintiff did not interview well, was not forthcoming with her answers, and did not provide specifics when asked to give examples of issues she had faced while working as a medical assistant. Id. ¶ 7. Ripley testified that "I do not recall if I was aware that Ms. Howard had filed an EEOC charge when I made the decision not to hire her." Id. ¶ 12. Ripley testified that she instead chose another candidate for the position, noting that the candidate had experience in a pediatric practice and presented well during her interview. Id. ¶ 10.

On May 11, 2011, Plaintiff sent Woolbright an email asking for clarification regarding whether she could "apply for available job positions openings because I have filed a claim with EEOC." 5/11/2011 Email (Dkt. 26-33). Woolbright responded the next day, stating that Plaintiff could apply for other positions and noting that Plaintiff's April 13, 2011 application had been submitted to the hiring manager, Ripley. 5/12/2011 Email (Dkt. 26-33).

Plaintiff applied for a seventh position on June 29, 2011, to be a medical assistant at the Pulmonary Suite. Application Summary at 2-3. The manager for this position was Lesley Wilbrandt. Id. Wilbrandt testified that she did not make the hiring selection for this position. Wilbrandt Aff. ¶ 4 (Dkt. 24-12). The HR representative for the position was Brandon Larzelere. Pulmonary Suite Sumamry (Dkt. 26-25). It is unclear from the record who hired the individual, Shaun Sebastian, for this position.[2]

---

[2] Plaintiff contends that Sebastian was an external candidate and was hired by Woolbright for the Pulmonary Suite position. Pl.'s Resp. at 11. However, the evidence Plaintiff cites does not indicate this. The record clearly shows that Sebastian was an internal candidate. See Pulmonary Suite Posting (Dkt. 26-25) (noting that Sebastian was an "internal transfer"). Further, the record indicates that Woolbright sent a job offer letter to Sebastian on January 20, 2011 for a clinical

6

On September 12, 2011, Plaintiff applied for an eighth position as a clinical services clerk at Health and Wellness Pain Management. Application Summary at 1. The hiring manager for this position was Gloria Mann and the HR representative was Sheran Bly.[3] Def.'s Resp. to Interrogs at 5. Plaintiff claims that she was not interviewed for this position. Howard Dep. at 74.

Plaintiff's ninth and last application with Defendant occurred on November 21, 2011, when she applied for a position as a clinical services clerk at Eastpointe Physicians. Application Summary at 2. Michelle Fromm was listed as the manager for the position and Larzelere was the HR representative. Id. Fromm did not remember interviewing Plaintiff, and Plaintiff claims she was not interviewed for the position. Fromm Aff. ¶ 5 (Dkt. 24-11); Howard Dep. at 80. According to Fromm, the successful candidate was an internal candidate who had worked for multiple years with Defendant. Fromm Aff. ¶¶ 10-11. Both Fromm and Larzelere testified that they had no knowledge of Plaintiff's EEOC charge. Fromm Aff. ¶ 6; Larzelere Aff. ¶ 6.

Plaintiff filed suit, naming William Beaumont Hospital as the sole Defendant. Plaintiff's complaint contains two counts: retaliation under (i) the ADEA and (ii) the ELCRA.

### III. SUMMARY JUDGMENT STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To withstand summary judgment, the nonmoving party must present sufficient evidence to create a genuine issue of material fact. Humenny v. Genex Corp., 390 F.3d 901, 904

---

services clerk position in the "Outreach Admin – GP department." 1/20/2011 Letter (Dkt. 26-26). Thus, the record demonstrates that Sebastian was hired for the "Outreach Admin" position prior to transferring to the Pulmonary Suite.

[3] Although Defendant states that it submitted an affidavit from Mann, it did not do so. The document filed apparently is a deposition excerpt from a different case. See Def.'s Ex. 4 (Dkt. 24-5).

(6th Cir. 2004). A mere scintilla of evidence is insufficient; rather, "there must be evidence on which the jury could reasonably find for the nonmovant." Id. "'After adequate time for discovery and upon motion, summary judgment is proper against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and upon which that party bears the burden of proof at trial.'" Kalich v. AT&T Mobility, LLC, 679 F.3d 464, 469 (6th Cir. 2012) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).

## IV. ANALYSIS

### A. Plaintiff's Prima Facie Case

Turning to the instant motion for summary judgment, Defendant asserts that Plaintiff cannot establish a prima facie case for retaliation. Def.'s Br. at 8-10 (Dkt. 24). According to Defendant, none of the individuals who made the hiring decisions had any knowledge of Plaintiff's pending EEOC claims. Id. at 9. Without knowledge by these individuals of Plaintiff's complaints of discrimination, Defendant argues that Plaintiff cannot establish a causal connection for her prima facie case. Id. at 10.

In response, Plaintiff maintains that she has established a prima facie case of knowledge; she supports this assertion with two arguments. Pl.'s Resp. at 12-17 (Dkt. 26). First, Plaintiff argues that Woolbright was central in the hiring process as a HR representative. Id. at 13-16. Plaintiff observes that Defendant's employment program policy states that "[o]nly the Human Resources Department has the authority to make job offers in order to ensure legal conformity with regards to hiring practices at Beaumont Hospital." Id. at 14 (quoting HR Policy at 5 (Dkt. 26-5)). Plaintiff stresses that Woolbright was a decision maker because Woolbright "exercised decision making authority and influenced the hiring process." Id. at 15. Second, Plaintiff asserts that she

8

has properly supported a prima facie case because Woolbright was a decision maker and knew about Plaintiff's protected activity. Id. at 16. Plaintiff notes the close temporal proximity between Plaintiff's rejections and her protected activity. Id. Plaintiff also highlights that Woolbright stopped speaking to her and that Moore knew about the unofficial corrective action. Id. at 17.

In Defendant's reply brief (Dkt. 29), Defendant reiterates its position that (i) Plaintiff has failed to demonstrate that a decision maker knew of Plaintiff's EEOC complaints, (ii) the complaint only alleges retaliation at Shorepointe, Shores Family, and Pulmonary Suite, and (iii) the retaliatory failure to hire allegedly began after Plaintiff filed her EEOC Charge in September 2010. Reply at 8 (Dkt. 29). Defendant maintains that Plaintiff holds the mistaken belief that Woolbright was a decision maker, when the record clearly indicates that she was not.

Plaintiff's supplemental brief (Dkt. 33) reiterates Woolbright's role as decision maker, arguing that courts "must consider the knowledge of all those who were involved in the decision or influenced the decision, even if Defendant claims they were not the ultimate decision maker." Pl.'s Supp. Br. at 3. In its supplemental brief (Dkt. 34), Defendant asserts that the record clearly shows that Woolbright did not have a role in Moore's decision making process. Def.'s Supp. Br. at 1-4. Next, Defendant reiterates that Woolbright was not a decision maker, distinguishing the cases cited by Plaintiff. Id. at 9-10.

Plaintiff's federal retaliation claim is premised upon the ADEA, which states, in part, that "it shall be unlawful for an employer . . . to discriminate against any member thereof or applicant for membership . . . because such individual, member or applicant for membership has made a

9

charge . . . under this chapter." 29 U.S.C. § 623 (2012).[4] An ADEA plaintiff must show the following four elements to state a claim of retaliation under the ADEA: (i) the plaintiff engaged in protected activity under the Act, (ii) exercise of the protected activity was known by the defendant, (iii) the defendant subsequently took employment action that was adverse to the plaintiff, and (iv) there was a causal connection between the protected activity and the adverse employment action. EEOC v. Avery Dennison Corp., 104 F.3d 858, 860 (6th Cir. 1997). Filing an age discrimination complaint with the EEOC is protected activity under the ADEA.[5] Braithwaite v. Dep't of Homeland Sec., 473 F. App'x. 405, 413 (6th Cir. 2012).

The critical element for Plaintiff's prima facie case is knowledge; specifically, which decision makers, if any, knew of Plaintiff's protected activity. To satisfy the knowledge element for the prima facie case, a plaintiff must show that the defendant employer's "relevant management decision-makers" knew of the plaintiff's "exercise of protected activity." Fenton v. HiSAN, Inc., 174 F.3d 827, 832 (6th Cir. 1999). Generally, in "retaliation cases, the plaintiff will be able to produce direct evidence that the decision making officials knew of the plaintiff's protected activity. In many such cases, for example, the adverse action will be taken by the same supervisor to whom the plaintiff has made complaints in the past." Mulhall v. Ashcroft, 287 F.3d 543, 552 (6th Cir. 2002). But a "plaintiff may survive summary judgment by producing circumstantial evidence to establish" knowledge. Id.

In determining who is a decision maker, courts consider the knowledge and motive of those who were "meaningfully involved" in or influenced the adverse action. Wells v. New Cherokee

---

[4] Claims under the ADEA and the ELCRA are analyzed under the same standards. Geiger v. Tower Auto, 579 F.3d 614, 626 (6th Cir. 2009). Therefore, the Court's analysis applies to both claims.

[5] Defendant does not contest that Plaintiff engaged in protected activity or suffered adverse action.

10

Corp., 58 F.3d 233, 238 (6th Cir. 1995). Courts distinguish between individuals who made the adverse decision and individuals who may have assisted with or carried out the decision. Cox v. Blue Cross Blue Shield of Michigan, No. 12-CV-320, 2013 WL 1838314 (W.D. Mich. May 1, 2013).

For example, in Cox, an employer terminated the plaintiff and the plaintiff asserted a retaliation claim because the plaintiff had made complaints to the EEOC. The plaintiff alleged that her employer had knowledge of the protected activity because two administrative employees from the employer's Employee Labor Relations (ELR) department were aware of the plaintiff's protected activity and participated in her termination. Cox, 2013 WL 1838314 at *6. The district court rejected this argument, stating that although the knowledge of the ELR employees and their participation in the termination "may, on first blush, suggest that knowledge of [the plaintiff's] protected activity could have played a part in" the termination, "a more careful review of the facts demonstrates that these individuals played a secondary and minor role" in the termination. Id. The court explained that the ELR employee who approved the termination only did so after the manager who supervised plaintiff recommended her termination. Id. at *6-*7. This manager did not have knowledge of plaintiff's protected activity. Id. The other ELR employee "merely provided human resources support." Id. at *7. The court found that the plaintiff had not challenged the evidence that the manager made the decision to terminate plaintiff or that the manager lacked knowledge of the protected activity. Id.

Turning to Plaintiff's claim, the parties dispute whether Woolbright, who had knowledge of Plaintiff's protected activity, was a decision maker who affected Plaintiff's ability to be re-hired. Defendant argues that the decision makers who made the hiring decision for each of the

11

positions to which Plaintiff applied did not know of Plaintiff's charge of discrimination with the EEOC. Plaintiff asserts that Woolbright was a decision maker, and was instrumental in the hiring process. A thorough analysis of the record demonstrates that Woolbright was not a decision maker and had no input with regard to Plaintiff's applications.

Woolbright's deposition sheds light on her role as a HR representative. Woolbright testified that handling job applications "was an online process." Id. at 116. Woolbright testified further that she had a limited role in the hiring process: "I was the first line of contact, so, as people applied, the input I had was either sending them on to the manager or not sending them on to the manager, and I did send [Plaintiff] on to every medical assistant position she applied for that whole time." Woolbright Dep. at 11. Woolbright also stated that the "ultimate decision is made by the hiring manager and my input is either I send the application on to the manager or I don't." Id. at 26. Thus, according to Woolbright, she merely shepherded Plaintiff's applicantions to the managers and supervisors, who would interview, evaluate, and decide which applicant to hire.

Plaintiff cites Defendant's policies as evidence that Woolbright was a decision maker, but these policies generally outline the role that the HR department played in Defendant's hiring practices. The relevant policies state that it was "the sole responsibility" of HR "to administer the interview, selection and hiring process of all new employees." HR Policy at 5 (Dkt. 33-2). Only HR had "the authority to make job offers." Id. In the case of internal applicants, such as Plaintiff, HR was responsible for "coordinating interviews, extending job offers, establishing release dates, and processing the transfer." Transfer Policy at 2 (Dkt. 33-2). "A prospective department manager/supervisor, in consultation with Human Resources, may consider an employee's entire work history when making an employment decision." Id. Importantly, these

12

policies limit HR's role and are consistent with Woolbright's understanding of her duties. These policies are silent on HR's role in making an employment decision, excepting that a department manager or supervisor could consult with HR when considering an applicant's entire work history.

The other evidence in the record does not establish that Woolbright was a decision maker. Defendant did not list Woolbright as a decision maker in its responses to the EEOC. Woolbright's job title is listed as "Human Resources Representative." 7/7/2011 Letter to EEOC (Dkt. 26-6). In response to Plaintiff's interrogatories, Defendant also identified Woolbright as a "recruiter" when asked to describe the "role" the "individual played in the hiring of applicants." Def.'s Resp. to Interrogs at 10 (Dkt. 26-4). Although this evidence demonstrates the label of Woolbright's job as a human resources professional, it does not establish that she had a decision-making role, beyond forwarding Plaintiff's applications for the various positions to which Plaintiff applied.

Having determined that a triable issue of material fact does not exist with regard to Woolbright's role in Plaintiff's applications, the Court turns to each of Plaintiff's attempts to be re-hired. With regard to her November 2010 application to Shorepointe**,** her former place of employment, Woolbright was the HR representative for the position and sent Plaintiff to an interview with the hiring manager, Tierney Moore. Moore testified that she made the hiring decision. Moore Aff. ¶ 15. Moore testified that Plaintiff did not interview well, but Moore gave Plaintiff a second interview with herself and Dr. Stachelski, the physician that Plaintiff would be assisting if she was hired. Id. ¶¶ 9-11. Dr. Stachelski testified that he recommended to Moore that Plaintiff not be hired because she "worked very slowly which made my job more difficult." Stachelski Aff. ¶ 3. For this position, the Court finds that there is no dispute in the record that

13

Moore and Stachelski were the decision makers. Mulhall, 287 F.3d at 552. And Moore and Stachelski state in their affidavits that they had no knowledge of Plaintiff's protected activity. Stachelski Aff. ¶ 9; Moore Aff. ¶ 12. Without either of them aware of Plaintiff's protected activity, Plaintiff cannot establish the knowledge component necessary for her prima facie case. Fenton, 174 F.3d at 832.

Plaintiff asserts that Woolbright allowed Moore to consider the unofficial corrective action in Plaintiff's departmental file. However, under Defendant's policies, hiring managers could consider everything in an applicant's departmental file. Woolbright Dep. at 16. Here, apparently, Moore took into account the unofficial corrective action. But this does not assist Plaintiff in establishing her prima facie case of retaliation. Plaintiff has failed to bring forth evidence that the decision makers knew of Plaintiff's protected activity.

Similarly, for Plaintiff's application with Shores Family Physicians, Woolbright was the HR representative and the hiring manager was Rhonda Ripley. Ripley testified that she made the hiring decision. Ripley Aff. ¶ 6, 9. Ripley could not "recall if [she] was aware that Ms. Howard had filed an EEOC charge when [she] made the decision not to hire her." Id. ¶ 12. Ripley stated that she made her decision solely on the relative experience and interviews of Plaintiff and the other candidate. Id. ¶ 13. Plaintiff fails to present any evidence that Ripley, as the decision maker for the Shores Family Physicians position, knew of Plaintiff's protected activity or considered it in making her decision.

For the positions at the Pulmonary Suite, Health and Wellness Pain Management, and Eastpointe Physicians, Woolbright was not the HR representative and the record does not reveal that she had any role recruiting Plaintiff for those positions. There is also no evidence, direct or

14

circumstantial, in the record that the hiring managers for these positions knew of Plaintiff's protected activity. See Polk v. Yellow Freight Sys., Inc., 876 F.2d 527, 531 (6th Cir. 1989) (holding that statement by supervisor that "I know where you've been" was circumstantial evidence sufficient to demonstrate knowledge of protected activity).

With respect to the three other applications that pre-date Plaintiff's charge of age discrimination, Defendant argues that Plaintiff cannot expand her claims in response to summary judgment and the Court should not consider these applications. In response, Plaintiff contends that her first three applications should be considered. Plaintiff admits that her first EEOC charge was filed in September 2010, but also claims that she expressed her belief that she was terminated based on her age during her termination meeting on March 12, 2010. Plaintiff argues that a verbal complaint can constitute protected activity for the purposes of a retaliation claim and, therefore, every subsequent job application needs to be examined for retaliation.

It is well established that a plaintiff cannot assert new legal claims or theories "in response to summary judgment." Bridgeport Music, Inc. v. WM Music Corp., 508 F.3d 394, 400 (6th Cir. 2007). Plaintiff's complaint states that she "engaged in protected activity for purposes of the ADEA by filing a charge of discrimination with the EEOC alleging violations of the ADEA." Pl.'s. Compl. ¶ 44. In her response, Plaintiff now argues that she engaged in protected activity during her layoff meeting as well.[6]

Plaintiff is correct that the Sixth Circuit has held that verbal opposition to an unlawful practice under the ADEA can be considered protected activity as long as the plaintiff "took an

---

[6] Plaintiff testified that during her termination meeting she told Woolbright that she felt she was the victim of age discrimination because "my co-worker was 25 and I was 55, and I did not understand that." Howard Dep. at 57.

15

'overt stand against suspected illegal discriminatory action.'" Blizzard v. Marion Technical Coll., 698 F.3d 275, 288 (6th Cir. 2012) (quoting Comiskey v. Auto. Indus. Action Grp., 40 F. Supp. 2d 877, 898 (E.D. Mich. 1999)). In theory, this doctrine could apply to her statement in her March 12, 2010 meeting. But Plaintiff's complaint of retaliation pinpoints the EEOC charge of age discrimination as the protected activity. Plaintiff's applications on March 19, 2010, March 22, 2010, and May 4, 2010 pre-date her filing a charge of discrimination with the EEOC. Plaintiff cannot expand her retaliation claim beyond what is stated in her complaint. Therefore, the denial of these applications cannot have been retaliation due to her EEOC charge.

Lastly, Plaintiff testified that she attempted to apply for a second opening at Shorepointe at some point in early 2011 after learning that the successful applicant for the first position had been terminated. While Plaintiff testified that Woolbright did not send her on an interview, there is no record of an application submitted by Plaintiff or who was the decision maker for hiring this position. See, e.g., Application Summary. Without an application from Plaintiff or some physical evidence of such application, there is no basis for a retaliation claim.

Because the "test for establishing a prima facie case of retaliation is phrased in the conjunctive," all four elements "must be satisfied." Fenton, 174 F.3d at 832. Plaintiff's failure to set forth the knowledge element means that the Court "need not examine the remaining elements with respect to [D]efendant's decision" not to rehire Plaintiff. Id.

**B. Cat's Paw Theory**

The Court's Order directing the parties to submit supplemental briefs requested that the parties address the "cat's paw" theory of liability in this case. 8/2/2013 Order (Dkt. 30). The Sixth Circuit has explained that a cat's paw theory of liability arises "[w]hen an adverse hiring

16

decision is made by a supervisor who lacks impermissible bias, but that supervisor was influenced by another individual who was motivated by such bias." Arendale v. City of Memphis, 519 F.3d 587, 604 n.13 (6th Cir. 2008). To succeed on a cat's paw theory, a plaintiff must show that (i) the individual intended to cause an adverse employment action and (ii) the discriminatory action was a proximate cause of the ultimate employment action. Chattman v. Toho Tenax Am., Inc., 686 F.3d 339, 351 (6th Cir. 2012). In other words, a plaintiff must bring forth evidence that demonstrates reliance on a "discriminatory information flow," so that "the ultimate decisionmakers acted as the conduit of the supervisor's prejudice." Madden v. Chattanooga City Wide Serv. Dep't, 549 F.3d 666, 678 (6th Cir. 2008) (quotation marks and brackets omitted).

In her supplemental brief, Plaintiff argues that cat's paw is applicable. Pl.'s Supp. Br. at 8-13. At the outset, it appears that Plaintiff has limited this theory only to her application to Shorepointe in November 2010 because Plaintiff argues that Woolbright was aware that Moore considered the unofficial corrective action, when that form should not have been considered. Id. at 10. Plaintiff asserts that "there is simply no satisfactory reason, other than retaliatory animus, to explain why Woolbright would fail to communicate this to Moore, and, instead allow Moore to make a hiring decision based on an impermissible reason." Id. at 11. Defendant responds that a cat's paw theory is inapplicable. Def.'s Supp. Br. 10-12. Defendant argues that a plaintiff asserting cat's paw needs to bring forth evidence of retaliatory animus. Id. at 11. According to Defendant, Plaintiff has not produced evidence that Woolbright harbored any retaliatory animus. In fact, Defendant argues, the evidence shows that Woolbright assisted Plaintiff with her applications. For the reasons set forth below, the Court agrees with Defendant because the record lacks evidence that Woolbright held animus against Plaintiff.

17

In cat's paw cases, courts examine the existence of animus held by employees who influenced unbiased decision makers. In cases where courts have found animus, the record demonstrates that the discriminating or retaliating employee had registered their animus or dislike of the plaintiff prior to the adverse action. For example, in Chattman, a case on which Plaintiff relies, the record showed that the discriminating employee lied in emails in making his discipline recommendations to other decision-making employees for an incident of horseplay at the workplace, notwithstanding the fact that horseplay was common and several other employees had engaged in horseplay without being terminated. Chattman, 686 F.3d 339, 351-352. The court held that the intent of the discriminating employee was easy to infer from the falsehoods in the emails. Id.

Similarly, in Staub v. Proctor Hospital, 131 S.Ct. 1186 (2011), the evidence showed that a supervisor had made complaints about the plaintiff-employee's status as a U.S. Army Reservist. The plaintiff's supervisors scheduled additional shifts without notice so that the plaintiff would "pay back the department for everyone else having to bend over backwards to cover his schedule for the Reserves," commented to the plaintiff's co-worker that the plaintiff's "military duty had been a strain on the department," asked the co-worker to help "get rid" of the plaintiff, and referred to the plaintiff's military obligations as "'a bunch of smoking and joking and a waste of taxpayers' money.'" Staub, 131 S.Ct. at 1189 (quotation marks and brackets omitted).

And recently, the Sixth Circuit held in Bishop v. Ohio Department of Rehabilitation and Corrections, 529 F. App'x 685 (6th Cir. 2013), that a genuine issue of material fact existed regarding retaliatory animus when some evidence showed that the plaintiff's immediate supervisor exhibited some animus toward her. Key to the court's discussion of a cat's paw theory was

18

evidence that showed that the plaintiff had complained of work schedules set by her immediate supervisor. Id. at 689. The immediate supervisor then reminded the plaintiff that she was on a probationary status, gave the plaintiff glares and dirty looks, and criticized the plaintiff in a performance review, which was the basis for the plaintiff's termination by a neutral decision maker. Id. at 689, 696-697.

Here, there is no evidence that Woolbright held any retaliatory animus against Plaintiff after Plaintiff filed her first charge of discrimination in October 2010. Unlike Chattman, there is no evidence that Woolbright uttered falsehoods to any hiring manager. Unlike in Staub and Bishop, the record here is devoid of any hostility directed by Woolbright to Plaintiff. Lastly, there is no evidence that Woolbright influenced Moore or any other decision maker in any way. As Woolbright noted, the unofficial corrective action was in Plaintiff's departmental file that Moore could access. Woolbright Dep. at 16. That disciplinary notice was placed in Plaintiff's file in March 2010, prior to her charge of discrimination in October 2010 and application to the Shorepointe in November 2010. In sum, the record is silent as to whether Woolbright held any retaliatory animus; therefore, the Court rejects application of a cat's paw theory.

## V. CONCLUSION

As Plaintiff cannot establish a prima facie claim, Defendant's motion for summary judgment is granted.

SO ORDERED.


Dated: December 19, 2013      s/Mark A. Goldsmith
        Flint, Michigan      MARK A. GOLDSMITH
                              United States District Judge

19

## **CERTIFICATE OF SERVICE**

      The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 19, 2013.

                                              s/Deborah J. Goltz
                                              DEBORAH J. GOLTZ
                                              Case Manager